

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Commodity Futures Trading Commission,<br><br>Plaintiff,<br><br>v.<br><br>O.C.M. Online Capital Markets Limited,<br><br>Defendant. | Civil Action No.: 1:11-cv-06210<br><br>Judge Ruben Castillo<br><br>Magistrate Judge Martin C. Ashman |

## [PROPOSED] CONSENT ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF AGAINST DEFENDANT O.C.M. ONLINE CAPITAL MARKETS LIMITED

### I. INTRODUCTION

On September 7, 2011, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint against Defendant O.C.M. Online Capital Markets Limited ("O.C.M." or "Defendant") seeking injunctive and other equitable relief, as well as the imposition of a civil monetary penalty, for violations of the Commodity Exchange Act ("Act"), as amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"), Pub. L. No. 111-203, Title VII (the Wall Street Transparency and Accountability Act of 2010), §§ 701-774, 124 Stat. 1376 (enacted July 21, 2010), to be codified at 7 U.S.C. §§ 1 *et seq.*, and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2011).

Specifically, the Complaint alleges two registration violations related to Defendant's off-exchange foreign currency ("forex") transactions. First, under Section 2(c)(2)(C)(iii)(I)(aa) of

1

the Act, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), an entity that solicits or accepts orders from non-eligible contract participants ("ECPs") in connection with forex transactions at a retail foreign exchange dealer ("RFED") must be registered with the Commission. Second, under Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011), in connection with forex transactions, all RFEDs must be registered with the Commission. The Complaint alleges that Defendant failed to register as required by these two provisions.

## II. CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendant without a trial on the merits or any further judicial proceedings, Defendant:

1. Consents to the entry of this Consent Order for Permanent Injunction and Other Equitable Relief Against Defendant O.C.M. Online Capital Markets Limited ("Consent Order");

2. Affirms that it has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order;

3. Acknowledges service of the summons and Complaint;

4. Admits the jurisdiction of this Court over it and the subject matter of this action pursuant to Section 6c of the Act, to be codified at 7 U.S.C. § 13a-1;

5. Admits the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act, to be codified at 7 U.S.C. §§ 1 et seq.;

6. Admits that venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006);

2

7. Waives:

(a) any and all claims that it may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. §§ 148.1 *et seq.* (2011), relating to, or arising from, this action;

(b) any and all claims that it may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this action;

(c) any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d) any and all rights of appeal from this action;

8. Consents to the continued jurisdiction of this Court over it for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Defendant now or in the future resides outside the jurisdiction of this Court;

9. Agrees that it will not oppose enforcement of this Consent Order by alleging that the Consent Order fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waives any objection based thereon;

10. Agrees that neither it nor any of its agents or employees under its authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order,

3

or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect its: (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the Commission is not a party. Defendant shall undertake all steps necessary to ensure that all of its agents and/or employees under its authority or control understand and comply with this agreement;

11. By consenting to the entry of this Consent Order, neither admits nor denies the allegations of the Complaint or the Findings of Fact and Conclusions of Law in this Consent Order, except as to jurisdiction and venue, which it admits. Further, Defendant agrees and intends that the allegations contained in the Complaint and all of the Findings of Fact and Conclusions of Law contained in this Consent Order shall be taken as true and correct and be given preclusive effect, without further proof, in the course of: (a) any current or subsequent bankruptcy proceeding filed by, on behalf of, or against Defendant; (b) any proceeding pursuant to Section 8a of the Act, 7 U.S.C. § 12a (2006), and/or Part 3 of the Regulations, 17 C.F.R. §§ 3.1 et seq. (2011); and/or (c) any proceeding to enforce the terms of this Consent Order;

12. Agrees to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph 41 of Part VIII of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against it, whether inside or outside the United States, and

13. Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Defendant in any other proceeding.

4

## III. FINDINGS AND CONCLUSIONS

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction, and equitable relief pursuant to Section 6c of the Act, to be codified at 7 U.S.C. § 13a-1, as set forth herein. THE PARTIES AGREE AND THE COURT HEREBY FINDS:

A.   Findings of Fact

   1.   The Parties to this Consent Order

   14.   Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act, to be codified at 7 U.S.C. §§ 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2011).

   15.   Defendant O.C.M. Online Capital Markets Limited is a company that is located in Tortola, British Virgin Islands. O.C.M.'s official place of business is Trident Chambers, P.O. Box 146, Road Town, Tortola, British Virgin Islands. O.C.M.'s actual operating location, however, is in Limassol, Cyprus. O.C.M. has never been registered with the Commission in any capacity, nor has O.C.M. applied for registration or exemption from registration.

   ii.   Defendant's Forex Business

   16.   From at least October 18, 2010 to September 15, 2011, Defendant solicited and accepted leveraged forex orders from United States customers who were not ECPs. Defendant did so through its website, www.XForex.com. Forex trading is the primary business marketed and discussed on Defendant's website, though the website also mentions that a customer can trade gold and silver through his trading account. The website's domain name is registered through a domain name registrar in Scottsdale, Arizona.

5

17. As advertised on its website, Defendant offers to accept funds from customers for the purpose of opening and maintaining individual retail forex accounts. Defendant offers three types of forex trading accounts: "Mini Account" that requires a minimum deposit of $100 with a maximum of $1,000; "Standard Account" that requires a minimum deposit of $1,000 with a maximum of $10,000; and "VIP Account" that requires a minimum deposit of $10,000 with no maximum. The accounts all feature up to 400:1 leverage. Defendant explains that leverage "vastly increase[s] your trading power."

18. In addition, Defendant offers two different types of trading platforms: a web based platform with an account minimum of $100; and the Meta Trader 4 platform with an account minimum of $400. Meta Trader 4 is a forex trading software platform commonly used by RFEDs.

19. A customer can open a trading account by submitting information online through Defendant's website. To open an account by submitting information online, the website directs a customer to click on a link titled "Open Live Account," which takes the customer to a page where there are fields for email, first name, last name, phone number, mobile number, and country. The default country was the United States; however, after the Commission filed the Complaint, Defendant changed its website to include a warning that only a non-United States customer could open an account. There is a button titled "Apply," but the customer must fill out all of the fields in order to successfully press or engage the button.

20. A potential customer in the United States can chat live with an O.C.M. representative. In addition, a customer may request to be contacted by O.C.M. On the contact page, there are fields for name, email, telephone number, preferred contact time, and country.

6

The default country was the United States; however, after the Commission filed the Complaint, Defendant changed the default country to Canada.

21. According to the website, a customer may fund his or her account using credit cards or wire transfer.

22. Defendant is the counterparty to its customers' forex transactions. Defendant directly offers two trading platforms to its customers, a web based platform and Meta Trader 4. Meta Trader 4 is a platform commonly used by RFEDs. Customers open trading accounts directly with Defendant and not with another entity. Customers also send funds directly to Defendant and not to another entity.

23. Under the "Terms and Conditions" link on the website, Defendant lists the agreement between Defendant and its customer ("Customer Agreement"). In its Customer Agreement, Defendant fails to inquire whether its customers are "eligible contract participants" and, in fact, allows individual customers who do not have total assets of $5 million to open accounts. Defendant also fails to inquire whether a customer would use the forex transactions to manage risk. In short, there is nothing in the Customer Agreement that prohibits non-ECPs from opening forex trading accounts with Defendant.

24. Defendant does not provide any information on its website or in its Customer Agreement regarding Defendant's ability to send or receive actual delivery of foreign currency. Likewise, Defendant fails to inquire into whether the prospective customer has the ability or the business need to accept foreign currency into his or her bank account.

25. From at least October 18, 2010 to September 15, 2011, Defendant solicited and accepted leveraged forex orders from United States customers who were not ECPs. These orders did not result in actual delivery within two days, nor did the orders create an enforceable

7

obligation to deliver between a seller and buyer that have the ability to deliver and accept delivery, respectively, in connection with their line of business.

26. From at least October 18, 2010 to September 15, 2011, Defendant was an RFED, in that Defendant was and offered to be a counterparty to retail forex transactions, and Defendant was not one of the entities enumerated as an exception to being an RFED.

27. On September 15, 2011, after the Commission filed the Complaint, Defendant sent correspondence to the Commission that stated that Defendant returned United States customer funds and posted warnings on its website that United States customers could not access or open accounts with Defendant. Defendant was apparently not aware that a technological failure resulted in Defendant accepting United States customers and their funds.

28. Defendant has never been registered with the Commission, has never applied for registration or exemption for registration, and is not exempt from registration.

B. Conclusions of Law

1. Jurisdiction and Venue

29. This Court has jurisdiction over this action pursuant to Section 6c of the Act, to be codified at 7 U.S.C. § 13a-1, which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation, or order thereunder.

30. The Commission has jurisdiction over the forex solicitations and transactions at issue in this action pursuant to Section 2(c)(2)(C) of the Act, to be codified at 7 U.S.C. § 2(c)(2)(C).

31. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006), because certain acts and practices of Defendant in violation of the Act occurred within this District.

ii. **Failure to Register in Connection with Forex Transactions**

32. By the conduct described in paragraphs 1 through 28 above, Defendant solicited and accepted leveraged forex orders from United States customers who were not ECPs. These orders did not result in actual delivery within two days, nor did the orders create an enforceable obligation to deliver between a seller and buyer that have the ability to deliver and accept delivery, respectively, in connection with their line of business. Defendant engaged in such activity without the benefit of registration with the Commission, in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa).

iii. **Failure to Register as an RFED**

33. By the conduct described in paragraphs 1 through 28 above, Defendant acted as an RFED by being and offering to be a counterparty to a retail forex transaction, and Defendant is not an entity excepted from the RFED definition. Defendant engaged in such conduct without the benefit of registration with the Commission, in violation of Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011).

iv. **The Necessity of a Permanent Injunction**

34. Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defendant will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

9

## IV. PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

35. Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, to be codified at 7 U.S.C. § 13a-1, Defendant is permanently restrained, enjoined, and prohibited from directly or indirectly:

   a. Engaging in any conduct in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), including, but not limited to, soliciting or accepting orders from any U.S. customer who is not an eligible contract participant ("ECP") in connection with leveraged forex transactions; and

   b. Engaging in any conduct in violation of Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011), including, but not limited to, offering to be the counterparty to any U.S. customer's retail forex transactions.

## V. DEFENDANT'S WEBSITES

36. Defendant and all persons insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or attorneys of O.C.M., and all persons insofar as they are acting in concert or participation with Defendant who receive actual notice of this order by personal service or otherwise, shall within three days of the entry of this Consent Order:

   a. Publish on all websites owned or operated by Defendant, including, but not limited to, www.xForex.com, a prominently displayed message that states: "O.C.M. does not provide services to United States residents" ("Website Notification");

10

    b.      Block or otherwise prevent U.S. residents from accessing or viewing any such websites; and

    c.      Block or otherwise prevent U.S. residents from registering for services or opening accounts through any such websites.

37. Defendant and all persons insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or attorneys of O.C.M., and all persons insofar as they are acting in concert or participation with Defendant who receive actual notice of this order by personal service or otherwise, are permanently restrained, enjoined, and prohibited from directly or indirectly contradicting, in any manner whatsoever, the Website Notification.

## VI. LIQUIDATION OF UNITED STATES CUSTOMER ACCOUNTS

38. Defendant states that it has liquidated all of its U.S. customer accounts and that no U.S. customers have any open positions at Defendant.

## VII. CERTIFICATION OF COMPLIANCE

39. Within twenty (20) days of the date of entry of this Consent Order, Defendant shall deliver to the Commission in the manner required by paragraph 41 of Part VIII of this Consent Order a written certification that it has complied with the requirements contained in Parts V and VI of this Consent Order. Such certification shall further include:

    a.      A list of all websites on which the Website Notification has been published;

    b.      A copy of all websites showing the Website Notification;

    c.      A list of all accounts, by customer name, account number, and e-mail address, in which Defendant liquidated open positions, the net realized

11

gain or loss on the liquidated positions, and the methodology, as set forth in Part VI, used to liquidate open positions; and

d. A list of all customers and the amount of money sent to each customer representing the final balance in the account, as well as a copy of the means by which the money was sent back to each customer.

## VIII. MISCELLANEOUS PROVISIONS

40. **Cooperation**: Defendant shall cooperate fully and expeditiously with the Commission, including the Commission's Division of Enforcement, and any other governmental agency in this action, and in any investigation, civil litigation, or administrative matter related to the subject matter of this action or any current or future Commission investigation related thereto.

41. **Notice**: All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to the Commission:

    Director, Division of Enforcement
    Commodity Futures Trading Commission
    Three Lafayette Centre
    1155 21st Street NW
    Washington, D.C. 20581

    David Chu
    Trial Attorney
    Commodity Futures Trading Commission
    525 West Monroe Street, Suite 1100
    Chicago, IL 60661

Notice to Defendant:

    O.C.M. Online Capital Markets Limited
    c/o Trident Trust Company (BVI) Limited
    Trident Chambers, P.O. Box 146
    Road Town, Tortola, British Virgin Islands

All such notices to the Commission shall reference the name and docket number of this action.

42. Change of Address/Phone: Until such time as Defendant satisfies in full its obligations as set forth in this Consent Order, Defendant shall provide written notice to the Commission by certified mail of any change to its telephone number and mailing address within ten (10) calendar days of the change.

43. Entire Agreement and Amendments: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

44. Invalidation: If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

45. Waiver: The failure of any party to this Consent Order or of any customer at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party or customer at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

46. Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Defendant to modify or for relief from the terms of this Consent Order.

Case: 1:11-cv-06210 Document #: 36-1 Filed: 02/12/13 Page 15 of 16 PageID #:241

47. **Injunctive and Equitable Relief Provisions:** The injunctive and equitable relief provisions of this Consent Order shall be binding upon Defendant, upon any person under its authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile, or otherwise insofar as he or she is acting in active concert or participation with Defendant.

48. **Authority:** Moniss Lucia hereby warrants that she is the Manager of O.C.M., and that this Consent Order has been duly authorized by O.C.M. and she has been duly empowered to sign and submit this Consent Order on behalf of O.C.M.

49. **Counterparts and Facsimile Execution:** This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

50. Defendant understands that the terms of the Consent Order are enforceable through contempt proceedings, and that in any such proceedings it may not challenge the validity of this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this *Consent Order for Permanent Injunction and Other Equitable Relief Against Defendant O.C.M. Online Capital Markets Limited.*

IT IS SO ORDERED on this 20th day of February, 2013.

Ruben Castillo,
UNITED STATES DISTRICT JUDGE

CONSENTED TO AND APPROVED BY:

Moniss Lee, Manager
On behalf of
O.C.M. Online Capital Markets Limited
Trident Chambers, P.O. Box 146
Road Town, Tortola, British Virgin Islands

Date: 04/12/2012

David Chu
Trial Attorney
Commodity Futures Trading Commission
525 West Monroe Street, Suite 1100
Chicago, IL 60661
(312) 596-0642 (telephone)
(312) 596-0714 (facsimile)
dchu@cftc.gov

Date: 02/12/2013

Approved as to form:

Robert P. Bramnik
Attorney for O.C.M Online Capital Markets Limited
Duane Morris LLP
190 South LaSalle Street, Suite 3700
Chicago, IL 60603

Date: October 5, 2012

15